## Case No. 17,329.

### WEBER v. UNITED STATES.

[Hoff. Op. 66; Hoff. Dec. 8.]

District Court, N. D. California. Dec. 2, 1859.

MEXICAN LAND GRANTS—LOCATION OF SURVEY—GRANT OF QUANTITY.

[1. Where a grant is of a certain quantity of land to be taken in the form of a square, and at

the place delineated on the diseño, but no boundaries are named, the condition as to quantity and shape must control, as against any natural objects represented on the map.]

[2. In locating a grant the court cannot be controlled in establishing the lines by the fact that the survey, which it regards as conformable to the grant, will include part of lands falling within the limits of a subsequent grant which has not yet been confirmed.]

Survey of the Stockton claim.

HOFFMAN, District Judge. This case comes up on objections to the survey filed by the claimant. The facts are as follows: On the 14th July, 1843, William Gulnac, from whom the claimant derives his title, petitioned Gov. Micheltorrena for the "land shown on the map" (which he transmitted with his petition) "consisting of eleven square leagues." No name is given to the tract, or boundaries mentioned in this petition; and it merely asks for a tract, eleven leagues in extent, at the place delineated on the map. In the informe given by the prefect of the First district, pursuant to the order of the governor, the land is called "Campo Frances"; and in the report made by Jimeno that officer objects to the extent of the land as being "very great, unless it is requested for the formation of a colony"; in which case he suggests that the names of the persons who formed it should be expressed. The governor, however, appears to have granted the land without inserting in the grant the names of the "families for whose benefit it was solicited, and in the decree of concession it is stated that eleven square leagues of land are granted to Don Guillermo Guinac, between the river San Joaquin on the east, and the laguna, called that of McCloud." In the title paper delivered to the party the land is described as that "known by the name of 'Campo Frances,' of the extent of eleven square leagues, between the river San Joaquin on the east, and the laguna called McCloud's." The fourth condition describes the land "as eleven square leagues in extent, as explained by the respective map."

It will be observed that in this case the map is not merely referred to in the grant as indicating and explaining the land granted, but it appears to have afforded to the governor the only means of ascertaining what land was solicited. The petition specifies no boundaries, nor does it even give the name of the land; it merely asks for the "land shown on the map, consisting of 11 sitios." On referring to this map, we find a figure delineated, each of the sides of which is marked as "lindero," or boundary, and as of the length of three leagues and a half. Two sloughs are also represented on the map, the one marked "Laguna de McCloud," and another, though not marked, is evidently intended to represent the estero of Campo Frances, from which the tract derived its name. Across the southern boundary line, the name "Campo Frances" is written. The site of this place, which appears to have been an old camp of French trappers, is not disputed. It appears not only from the distance between these sloughs, as represented on the map, compared with the entire length of the western boundary line, which is marked of the extent of 3½ leagues, but also from the scale attached to the map, that the draughtsman supposed that the Campo Frances slough was about two leagues from the Laguna de McCloud. He has, accordingly, placed the eastern and western corners at a distance of about three-fourths of a league from those esteros respectively, so as to give to the western boundary the length of 3½ leagues, as is inscribed upon it. It appears, however, that the real distance between the sloughs is much less than two leagues, and the land cannot now be surveyed in a figure with equal sides and including an area of 11 leagues, without extending the western line, either to the north of the Laguna de McCloud, or to the south of the Campo Frances, to a greater distance than according to the diseño that boundary extends.

Under these circumstances two questions are presented:

1. Shall the western boundary be restricted to the limits represented on the diseño, i. e. shall it stop at points to the north and south of those esteros, at the distance from them indicated by their position on the diseño, notwithstanding that by so doing that line would not be more than 2½ leagues long; or shall the "call for length" determine the extent of that boundary, and the line be produced until it is of sufficient length to contain within the three other boundaries of equal length, an area of eleven leagues?

2. If this line is produced as suggested, shall it be produced southwardly beyond the Campo Frances slough, or northwardly beyond the Laguna de McCloud, or equally beyond both, until the requisite length be obtained?

The last was the only question discussed at the hearing, but the first is necessarily presented, and requires consideration. It is evident that if we fix the length of the western boundary line by the points at which by the diseño it appears to terminate. —that is at points distant three-quarters of a league to the north and south of the two sloughs respectively.—we must disregard the other call of the diseño, which gives to that line the length of three and one half leagues. The claimant could not then obtain a tract eleven leagues in extent, unless we lengthen to a corresponding extent his northern and southern lines, so that he may obtain in depth what he loses in length along the river. But to give this power to the survey would be to disregard one of the most obvious indications of the diseño, viz. that the tract was to be bounded by four parallel

lines of equal length, and the extent along the river was to be equal to the depth running back from the river. If, however, we follow that call of the diseño, and make the boundaries of equal length, then, with the western line limited as has been mentioned, the whole tract will be of considerably less extent than eleven leagues — the quantity granted. But that the claimant is entitled to that quantity of land is clear; for not only has it been confirmed to him by the final decree [Case No. 16,657] under which the survey has been made, but it appears from the documents in the case that he petitioned for that quantity without mentioning any boundaries; that objections were made because of the quantity, and that the governor determined to grant, and the assembly to approve, a concession of that quantity; the natural objects mentioned in the grant serving merely to indicate the place where the eleven leagues granted were to be taken, and not being intended as boundaries of the tract. To determine the length of the western boundary by the position of its two ends, with reference to the natural objects indicated on the diseño, but without reference to its length as mentioned on the same drawing, is to assume that the governor intended to grant a specific tract by boundaries, of which the area was merely estimated, and not a tract of certain dimensions, of which the supposed boundaries were indicated. But the usage and general practice with regard to grants in this country, and the proceedings and documents relating to this grant, clearly showing that the governor, who had probably no knowledge of the tract, except from the diseño, could not have intended to limit the length of the line along the river with reference to the natural objects delineated on the diseño, but to make it of a certain extent, viz. three and a half leagues, so as to include, with three other boundaries of equal length, the area of land, viz. eleven leagues, which he undoubtedly intended to grant.

It is true, as a general principle, that in construing a grant, distance should yield to natural monuments; and this for the obvious reason that it is more likely that parties should mistake the length of a line than the visible object at which it begins or terminates. But in this case the beginning and the termination of the line are obviously imaginary points, taken at such distances to the north and south of the two sloughs as it was supposed would make the length of the line such as was intended, and is inscribed upon it; and the language of the grant itself, as well as the petition and preliminary proceedings, show that the grant was of a certain quantity of land, to be of the shape and at the place delineated on the diseño. For these reasons I think it clear that the land should be surveyed in a figure of four equal sides, of such length as to embrace within them the quantity of land granted to Gulnac and confirmed to the claimant. The western boundary must, therefore, be produced either to the north or south, or in both directions, until the requisite length be obtained; and this brings us to the second question presented for discussion.

It is concluded on the part of the United States that the line should be extended towards the south, and that the position of the northern termination, as indicated by the diseño, should be preserved. The reasons for this location chiefly relied on, are: 1st. That the grant mentions the land as "between the Laguna de McCloud and the San Joaquin"; that, therefore, that call is of higher dignity than any other; and the northern boundary should be fixed as near the laguna as the diseño will permit, and in strict conformity to it. 2d. That by extending the line northward the river Calaveras will be reached, which is not delineated on the diseño, and was not intended to be included. 3d. That another grant to the northward embraces in its diseño lands to the southward of the Calaveras, which, if it should be finally confirmed, would be interfered with by this grant, if located as desired by the claimants. There is certainly much force in these objections, and the point is not free from difficulty. It is to be observed, however, in answer to the 1st, that, though the grant and decree of concession do describe the land as between the river San Joaquin and the Laguna de McCloud, yet it is clear that that description was not used to indicate the boundaries of the land. The diseño which accompanied the petitions showed unmistakably to the governor that the land solicited was not bounded by the Laguna de McCloud, but by a line drawn a considerable distance beyond it, and obviously as far beyond it as, according to the draughtsman's idea of the topography, would be necessary to make a line drawn at an equal distance beyond the Campo Frances slough, 3½ leagues distant from it.

If the only description of the land were that contained in the grant, it would undoubtedly be necessary to take the Laguna de McCloud for a boundary, but, inasmuch as the land asked for and granted is shown by the diseño, on which the northern boundary is laid down as beyond the laguna, there does not seem to be any reason for treating the mention of that laguna in the grant as constituting a call of higher dignity than any other call indicated on the diseño. It appears, moreover, that the "Campo Frances" is represented on the diseño as on or near the southern boundary. The site of this camp is a natural object, susceptible of certain identification. From it the rancho derived its name. It might therefore be argued with much force that this call should govern, and, inasmuch as the northern line is fixed at an arbitrary distance above the laguna, while the position

of the southern boundary is indicated by the site of the Campo Frances, that therefore the line should be extended for quantity to the north, and not to the south, and the indication of the diseño as to the location of the southern line should be respected. But it appears to me that there can be but two modes of locating this grant. The one is, as before stated, to determine the length of the western boundary, by reference to the natural objects on the diseño, disregarding the call for length. The other is, to treat the grant as a grant of a certain quantity of land, and to make the call for length on the western line, and the delineation of the tract as an equilateral figure control the calls for natural objects. For the reasons heretofore assigned I adopt the latter alternative, and, if this view be correct, I can see no sufficient reason for making up the required length in one direction more than in the other.

The second reason assigned for locating the land as desired by the United States has already been incidentally disposed of. It is true the Calaveras location is not on the diseño. It is apparent that, owing to the error in regard to the distance between the sloughs, it was not supposed it would be reached. But neither is any natural object to the south of the Campo Frances slough represented, and for the same reason. And yet, if such had existed, it would not, on the hypothesis on which the diseño is drawn, have been included. The fact that either or both of these objects are not included, merely proves what has been so often stated: that the draughtsman supposed that the requisite quantity would be obtained by establishing the northern and southern boundaries at about three-fourths of a league to the north and south of the two esteros respectively, and, therefore, delineated his boundaries accordingly. The suggestion of the district attorney, therefore, may tend to show that the line should be limited by the natural objects; but it does not tend to support his own theory of location, which admits that the extent of the line should be produced in a southerly though not in a northerly direction.

With respect to the suggestion that there is another, but more recent, grant to the northward, which, if it be finally confirmed, will be interfered with, it is to be observed that, if the construction already given to the grant in this case be correct, the rights of the claimants must be deemed to have been fixed by it, and could not be affected by subsequent grants of any portion of the tract. The subsequent grantee, falling into the same error with regard to the distance between the sloughs as that committed by the draughtsman of the diseño in this case, may have supposed that the land, three-fourths of a league north of McCloud's lake, was vacant, and therefore included it in his diseño. But if we are right in supposing

that the governor intended to grant with reference to quantity, and not to natural objects, the land had already been granted to Gulnac,, and the subsequent grantee was mistaken in supposing it vacant. It moreover appears that the grantee has sold or quit-claimed large portions of the land on the northern side of the Laguna de McCloud, while to the south of the Campo Frances slough a considerable portion of the land over which the United States now proposes to extend the survey has been sold to pre-emptioners.

On the whole, it has appeared to me, though the case is not free from difficulty, that the tract should be located in an equilateral figure, the sides of which are to be of such length that the whole area included within them shall be eleven square leagues of land; the western boundary of the tract to be made of the requisite length by extending it to an equal distance to the north of the Laguna de McCloud, and to the south of the Campo Frances slough, until the requisite length be obtained.

[In accordance with this opinion, a new survey was made, which was confirmed. Case No. 17,-328.]